HOLLIS L. CALHOUN *v.* STATE OF ARKANSAS

5548                                        462 S. W. 2d 849

Opinion delivered February 8, 1971

*A. K. Monroe,* for appellant.

*Joe Purcell,* Attorney General; *Milton Lueken,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant prays reversal of the order of the circuit court denying him an evidentiary hearing on his petition for post-conviction relief under our Criminal Procedure Rule 1. His first motion to vacate his sentence of 20 years upon a charge of second degree rape alleged that he was denied the right to assistance of counsel in the proceedings leading up to his sentencing. He averred that he had not waived this right, saying that he was ignorant of his rights in

this respect until long after the judgment imposing his sentence. This motion was properly denied without a hearing pursuant to Criminal Procedure Rule 1 (C) upon a record that showed conclusively that Calhoun was not only advised by the circuit judge of his right to counsel but that an attorney was appointed to represent him before his plea of guilty was accepted.

Calhoun then filed an amended petition seeking an evidentiary hearing and alleging, in addition to the grounds stated in his first petition, that he was not advised or admonished by the court of the consequences of his plea of guilty. The circuit judge again denied the petition without a hearing, finding that the record conclusively showed that appellant had voluntarily entered his plea of guilty with an intelligent understanding of his constitutional and statutory rights. The trial judge noted in the order denying this petition the following: that an attorney had been appointed for appellant, in order to assure the court that his plea of guilty was voluntary; that, even though the court's own advice to appellant of the maximum sentence for the crime was given before the sentence, but after his plea of guilty, he did not, either before or after sentence or in his first petition, indicate that his plea of guilty was involuntary, or attempt to withdraw the plea; that this issue was first raised more than two years after the sentence was imposed.

We find abundant support for the findings of the trial court in the record. It discloses that, on arraignment, the circuit judge meticulously explained to Calhoun the nature of the charge, the presumption of innocence, the burden of proof upon the state, his right to speedy trial by jury, his right to remain silent, the fact that any statements made by him when aware of his constitutional rights could be used against him upon trial, and his right to assistance of counsel. Appellant had told the court that he understood the charge against him, and after the court's explanation said that, while he could be provided with the services of an attorney, he did not want to avail himself of this opportunity, as

he just wanted to plead guilty. The judge then advised appellant that he did not want to accept the plea of guilty unless appellant had talked to an attorney. Even though appellant persisted in the statement of his desire to plead guilty and have it over with, the court appointed an attorney to represent appellant and suggested that this attorney discuss with him the merits of his case.

The record discloses that Calhoun and the attorney returned to the courtroom after some interval, and the attorney advised the court that if the things Calhoun had told him were true, the plea would be in order. He also requested a mental examination of appellant, and received assurances that a letter would be sent to the Department of Correction revealing appellant's medical history. The record discloses that the attorney then advised the court that Calhoun was ready to plead, but the judge repeated that he did not want any plea unless it was voluntary. Thereafter, the record reveals the following:

DEFENDANT: I would like to say a word or two. I told myself it was hurting me. I got forgiveness from her. I brought it all on myself. I want to plead guilty. I don't want to bring them in no court. I want to take what I got coming.

MR. CHAMBERS: The guilt is on his conscience and wants to talk to someone to relieve him of it. He is ready to plead.

THE COURT: What is your plea to the charge of second degree rape?

DEFENDANT: I am going to plead guilty to it, Your Honor.

THE COURT: Is your plea of guilty voluntary on your part without force or coercion, duress, promise of reward?

DEFENDANT: Yes, sir.

THE COURT: This is one of the worst violations in the statutes.

MR. KINARD: The State has no recommendation. It is within the confines of the limitations of the statute.

THE COURT: Do you recommend the maximum?

MR. KINARD: Yes, sir.

THE COURT: The penalty is from three to twenty-one years in the Department of Correction. It is going to be the judgment and sentence of the court that you be sentenced to the term of twenty years in the Department of Correction. You will have an opportunity to make parole after you serve one-third of your sentence less good time earned. You will have an opportunity to earn eight days per month under five years statutory good time, twelve days per month over five years, statutory good time, and five days per month meritorious good time. Your attorney can explain this to you. I have no control over paroles. It is entirely up to the Parole Board.

DEFENDANT: Yes, sir. I will try to make the best of it. I know I wasn't at myself. I don't want no mercy. I hope you will pray for me. I would appreciate your praying for me. I don't want to have any trouble up there.

The only basis for appellant's contention that he should have a hearing on the additional allegations of his amended petition is the failure of the trial judge to advise him of the length of sentence provided by law for the offense with which he was charged. He now argues that this failure prevented him from understanding the consequences of his plea.

We do not agree with appellant that the mere fact that the judge did not state the maximum sentence for

second degree rape rendered appellant's plea of guilty involuntary. We have seldom seen a record which more clearly depicted an intentional determination on the part of an accused to enter a plea of guilty. The accompaniment of the repeated expression of appellant's insistence on entering this plea with his statements of remorse and willingness to accept his punishment following his statements of desire to enter the plea without advice of counsel certainly indicates that Calhoun was not only willing, but anxious, to admit his guilt and to have his punishment imposed without any trial. He does not even now assert his innocence. Before imposing sentence the circuit judge advised Calhoun that the offense with which he was charged was one of the worst violations in the statutes. No protestation or attempt to withdraw the plea was expressed by appellant at this time or when the judge did state the range of punishment or even after the sentence was pronounced. Appellant's statement following the sentence belies any such feeling or intention on his part and clearly demonstrates that lack of knowledge of the possible sentence had nothing whatever to do with his plea of guilty.

Appellant relies upon *McCarthy* v. *United States,* 394 U. S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969) to support his argument. This decision was based solely upon the requirements of Rule 11 of the Federal Rules of Civil Procedure and was made under the United States Supreme Court's supervisory powers over the lower federal courts. The opinion clearly states that the court did not reach constitutional arguments. Neither this case nor others based upon requirements of statutes or court rules[1] have any application, as we have no such requirement.

We have previously held that it is to be assumed that one who appears in court with an attorney of his choice has ample opportunity to understand the consequences of his plea of guilty. See *Thornton* v. *State,* 243 Ark. 829, 422 S. W. 2d 852. We have never specifical-

[1]See, e. g., *State* v. *Banford,* 13 Utah 2d 63, 368 P. 2d 473, 97 A. L. R. 2d 547.

ly stated that the same rule should apply when counsel was appointed. In at least one jurisdiction, it has been held that the court is under no duty to inform a defendant represented by counsel of the effect of his plea of guilty. *People* v. *Emigh,* 174 Cal. App. 2d 392, 344 P. 2d 851 (1959). It has also been held that one represented by counsel will not be heard to say that he was misled regarding his possible sentence or his rights in the premises regarding a plea of guilty. *State* v. *Cummings,* 52 Wash. 2d 601, 328 P. 2d 160 (1958). Even when counsel is court appointed, it has been said that a defendant cannot be deemed to have been deprived of any constitutional right on the theory that he was not informed of the effect of a plea of guilty. *People* v. *Emigh,* supra. Relief has been denied where there was no showing that the appointed attorney failed to properly represent the complaining defendant. *People* v. *Loeber,* 158 Cal. App. 2d 730, 323 P. 2d 136 (1958), appeal dismissed and cert. denied, 358 U. S. 132, 79 S. Ct. 242, 3 L. Ed. 2d 226.

Even though the assumption, that an accused represented by court-appointed counsel has full opportunity to know the consequences of a plea of guilty, may not be fully warranted in every case, we are unwilling to assume that any attorney appointed to represent any person charged with any offense in any court in this state would be derelict in his duty to fully inform the accused of his rights and of the possible consequences of his plea. We certainly will not make that assumption in the absence of any allegation by a petitioner seeking relief from the consequences of his plea that the attorney misled, or failed to inform, him or was otherwise guilty of misconduct or breach of duty. There is not even a suggestion by appellant of any such conduct. As a matter of fact, appellant does not even allege that he did not know the possible sentence for the crime to which he was not only confessing, but proclaiming, his guilt.

While we find no grounds for relief here, we hasten to add that it is the better practice for the circuit judge

to ascertain to his own satisfaction that one who enters a plea of guilty has previously been informed of his rights and of the maximum sentence which could be imposed.

The judgment is affirmed.