Joe NELSON v. STATE of Arkansas

5704                                    479 S.W. 2d 556

Opinion delivered May 1, 1972

*H. Allen Dishongh,* for appellant.

*Ray Thornton,* Atty. Gen., by: *John D. Bridgeforth,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. Joe Nathan Nelson appeals from a denial of his petition for post-conviction relief in the Pulaski County Circuit Court. He relies on the following point for reversal:

"The circuit court erred in failing to grant the relief prayed for by the petitioner when the evidence presented at the Rule 1 hearing demonstrated that the petitioner had made an involuntary guilty plea to the charges of grand larceny and escape."

Nelson was charged with grand larceny and escape in the Pulaski County Circuit Court. He entered pleas of guilty and was sentenced to ten years on each count, the sentences to run concurrently. On his petition for post-conviction relief under Criminal Procedure Rule No. 1, Nelson alleged that he was denied due process of law under the Sixth Amendment of the United States Constitution, and that he was represented by ineffective counsel in that his court appointed attorney failed to bring to the court's attention evidence of threats and other forms of coercion which induced the petitioner to enter his pleas of guilty.

Nelson testified at his Rule 1 hearing that Officer Crump, who interrogated him in the jail following his arrest, told him that regardless of whether he committed the crime with which he was charged, he would be sent back to prison upon revocation of a suspension of sentence under a previous conviction. He testified that because of this threat he escaped from the Pulaski County jail when some other inmates sawed the bars from a cell. He testified that when he was apprehended following his escape, he was advised by Captain Allen of the police department that he had two charges pending against him, escape and grand larceny. He said Captain Allen told him that if he would cooperate he, Captain Allen, would try to help him in court, but if he refused to cooperate that he, Captain Allen, had ways of making him cooperate. He testified that another prisoner, Kenneth Odom, told him that it was the jailer's practice to place black men in the cells with white men in order to force cooperation. He said that because of what prisoner Odom told

him he decided to plead guilty. He said that he told Captain Allen he would cooperate if Allen would assist him in obtaining a lighter sentence. He said that immediately after his discussion with Allen he was taken before the circuit judge where he entered his pleas of guilty. He said that attorney McArthur was appointed to represent him at trial but that he did not tell his attorney why he wanted to plead guilty. He said that he did tell his attorney he had been promised a five year sentence by Captain Allen.

At the original preliminary hearing in municipal court, a Mr. John Reader testified that on the day of the alleged crime he was traveling west on 15th Street in his automobile when he saw three black men running from an alley followed by Mr. Snyder who was shouting "police." He said one of the men had on a blue shirt, one a yellow shirt and one wore a white shirt. He said that the three men ran in front of his car and that he followed them in his automobile a short distance and when they turned the corner of the block, he shouted at them to stop and that Joe Nelson stopped and came back to his car where he placed him under citizen's arrest. He said Nelson was the one wearing a yellow shirt and that the three men had traveled about 300 feet when he stopped Joe Nelson.

Everett Snyder testified that he was bookkeeper for the David White Electronic Company and shortly after noon on the day in question, he had started to his automobile parked in the alley behind the business where he worked and was carrying the day's receipts for deposit in the bank. He said that when he entered the alley, three men came up to him and one of them asked about the location of a cafe and then he grabbed the bag containing the intended bank deposits and that all three ran away. He said he ran after them but they got away from him.

Mr. William C. McArthur, Nelson's court appointed attorney, testified at the Rule 1 hearing that he represented Nelson's co-defendant, Richard Joyner, as well as Nelson under court appointment; that Nelson entered a

plea of guilty and that Joyner pleaded not guilty. He said the prosecuting witness, Snyder, was unable to positively identify either Nelson or Joyner as the one who actually took his money. He testified that John Radar, who made the citizen's arrest, failed to appear as a witness at Joyner's trial and Joyner was acquitted. He said that he remembers that Nelson specifically told him that he wanted to plead guilty to the charges and that he does not recall Nelson telling him why he wanted to plead guilty. He said that he does not recall any specific incident relating to Nelson's pleas of guilty, but the it has always been his practice with clients desiring to enter pleas of guilty, to discuss the client's desires with the client and point out to him the probable effect of entering the pleas. He said he believes he did the same with Joe Nelson. He testified that he does not recall Nelson advising him of any threats or any form of coercion that would induce him to plead guilty and had any such matter been called to his attention, he would have refused to participate in the pleas of guilty. He said that he does not recall Nelson saying anything to him about any promises of a light sentence made by Captain Allen. He said that if anything like that had been mentioned to him he would have brought it to the trial court's attention.

Officer H. L. Crump, detective in the Little Rock Police Department, testified that he did not participate in the Joe Nelson and Richard Joyner investigation and did not question either man concerning the robbery of Mr. Snyder. He denied that he told Joe Nelson that if he didn't plead guilty that he would see that he was sent back to the penitentiary. He said that he had previously questioned Nelson but not in connection with either of the offenses to which he entered his pleas of guilty.

Captain Opal Allen testified that he is a deputy sheriff and was chief jailer at the Pulaski County jail. He testified that he was well acquainted with Joe Nelson and denied that he did anything physically, mentally or otherwise to intimidate, coerce, or to force Joe Nelson to enter pleas of guilty to the charges against him of

grand larceny and escape. He denied that he threatened to put Nelson into a cell with white inmates and testified that this sort of thing wasn't done at the county jail. He said that ever since the present sheriff was elected and took office in 1969, the jail cells have all been integrated. He said he does not remember Nelson asking him to check with the prosecuting attorney as to a recommendation in connection with a guilty plea. He said that he has done this for prisoners on other occasions, but does not remember doing so on this occasion. He testified that he definitely remembers that he never did specifically advise Nelson to plead guilty to the charges against him.

One Kenneth Odom testified that he is presently incarcerated in the state penitentiary and is acquainted with Joe Nelson; that he was a prisoner with Nelson in the Pulaski County jail and remembers specifically telling Nelson that he would be physically abused if he did not plead guilty to the charges against him. He said that he so advised Nelson because he felt jailers could punish prisoners any way they wanted to at the jail. He said that they had thrown him (Odom) into a cell with "five colored guys" and that the jailers had told "them colored guys" to kill him. He testified that he does not remember whether he told Nelson this before he entered his pleas of guilty, but that if Nelson says it was before the pleas of guilty, he is telling the truth.

The circuit court record upon the acceptance of Nelson's pleas of guilty is not as clear as it might have been, but the record indicates that after the trial court was advised that Nelson desired to enter pleas of guilty, Nelson's court appointed attorney pointed out to the court that Nelson was on parole under previous conviction from Jefferson County and the parole would probably be revoked. The court advised that he had nothing to do with that and asked the prosecuting attorney what recommendation the state had to offer. The prosecuting attorney indicated that he thought 15 years imprisonment would be a proper sentence. The record then appears as follows:

"MR. MCARTHUR: That is correct, Your Honor.

THE COURT: All right. You got any recommendations, Mr. Prosecutor?

MR. MUNROE: I would say, Oh, I would say about fifteen years.

THE COURT: That's a little high.

MR. MCARTHUR: I think that is going a little stout on this case, Your Honor.

THE COURT: What did he do?

MR. MUNROE: Well, he got three years for attempted bank robbery and fifteen years for robbery.

THE COURT: Now?

MR. MUNROE: Previously.

MR. MCARTHUR: He's going back to the penitentiary on violation of his parole, Your Honor. He's got ten years remaining on that sentence apparently. This is the information I get.

MR. STEWART: Who is revoking his parole?

MR. MCARTHUR: It's here. He is being held now in the County Jail.

THE COURT: Well, what have we got? I don't know.

MR. MCARTHUR: I was in Municipal Court on the Grand Larceny. charge, and it's—

MR. MUNROE: (Interposing) He got a robbery in 1964, Your Honor, and he had an attempted robbery in 1960.

THE COURT: Well now I have a couple of old cases

down here, 67176 through 179. Are those the cases?

DEFENDANT NELSON: No, sir, this is the first time I ever been before you.

THE COURT: This is the first time you ever been before me?

DEFENDANT NELSON: Yes, sir.

THE COURT: Well, this man's name is Nelson, and that is on Odom.

MR. MCARTHUR: Anyway, Your Honor, apparently his parole is being revoked, and he is going back down there on this revocation. Now, I was just told about this a few minutes ago, and, at the time—

THE COURT: (Interposing) You mean the State is revoking his parole, not me?

MR. MCARTHUR: I presume, Your Honor.

THE COURT: Where did he fall from?

DEFENDANT NELSON: Jefferson County.

MR. MUNROE: Well, according to this thing—

THE COURT: (Interposing) Said he fell from Jefferson County.

MR. MUNROE: I believe that is right.

THE COURT: When did he fall?

MR. MUNROE: It was '64 that he was committed to the penitentiary for fifteen years so it was obviously—

MR. MCARTHUR: (Interposing) Got out in '69.

MR. MUNROE: So he got out sometime in '69 because he was charged in '69 with this, and he's got a figitive hold from the parole board. I presume it's the parole board that's going to revoke him.

DEFENDANT NELSON: They are going to revoke me, sir.

THE COURT: Well, I didn't have anything to do with that.

MR. MCARTHUR: No.

THE COURT: Well, I'll give him ten years on these two counts.

MR. MCARTHUR: Now, I don't want to put Mr. Stewart in a spot, but, when I was asked to stay here I thought there had been an agreement as to a term of years, but—

THE COURT: (Interposing) Well, if you have agreed on something.

MR. STEWART: Well, we got a call this morning from the jail, from Mr. Allen, that Joe Nelson wanted to come up and plead guilty on these two charges, and I was informed at that time that Mr. Nelson had communicated with another deputy in the office and that they had said that we would recommend five years. Then I informed Mr. McArthur of that a few minutes ago, and then Mr. McArthur told me that Mr. Nelson informed him that there was no time mentioned and that's all I know about it. Now, whether or not there was sometime mentioned, it's second-hand as far as I am concerned.

DEFENDANT NELSON: He said I talked to who?

MR. MCARTHUR: Well, the conversation was between Captain Allen and somebody in the prosecutor's office.

MR. MUNROE: Well, that conversation was between Captain Allen and myself. Those files have been sitting on my desk, and Captain called me about a week and a half ago—

THE COURT: (Interposing) Well, what did Captain Allen agree to?

MR. MUNROE: He didn't agree to anything. He said he had this man down there and wanted to plead guilty and when could we bring him up, and I said anytime that is convenient with you and the Court, and I didn't make any recommendation of what we would give him.

THE COURT: Well, I feel like ten is about right myself unless they have some kind of agreement. If they have an agreement, I'll go along with it. The prosecutor said he didn't make any agreement.

MR. MCARTHUR: I don't have any idea, Your Honor.

MR. STEWART: I don't know if Mr. Nelson was under the conception that there was an agreement of five years or not.

THE COURT: Well, if you don't want to plead guilty, take him back to the jail and we will try him later. You want to take ten?

DEFENDANT NELSON: Yes, sir.

MR. STEWART: Well, has his parole been revoked for ten years?

THE COURT: I don't know. I'm going to give him ten years."

From the record before us it is apparent that Nelson was on parole from a 15 year sentence from Jefferson County at the time he entered his plea in the present case. It is clear from the record that Nelson participated

in the discussion between the court and the attorneys at the time he entered his pleas, and that at no time did he mention to the court any coercion or plea bargaining for five years or any other specific period of time.

From the record before us we are unable to say that the trial court erred in refusing Nelson's motion for post-conviction relief.

The judgment is affirmed.